| | | |
|---|---|---|
| TYSON DANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00931-RK |
| | ) | |
| STANDARD GUARANTY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are (1) Defendant Standard Guaranty Insurance Company's motion for judgment on the pleadings, (Doc. 16), and (2) Plaintiff Tyson Daniel's motion to amend the complaint, (Doc. 18). The motions are fully briefed. (Docs. 16, 17, 19, 22, 23, 24.) After careful consideration and for the reasons explained below, Defendant's motion for judgment on the pleadings is **DENIED**, and Plaintiff's motion to amend the complaint is **DENIED as moot**.

## Background[1]

Plaintiff Tyson Daniel owned a multi-family residential property located at 912 Benton Blvd., Kansas City, Missouri 64127 (the "Property"). Defendant Standard Guaranty Insurance Company issued a lender-purchased policy of property and casualty insurance to non-party PHH Mortgage Services, effective August 5, 2023, which provided coverage for the Property (the "Policy"). The Policy lists as the named insured "PHH Mortgage Services its successors and/or assigns as their interest may appear," and lists as the named borrower Plaintiff Tyson Daniel. (Doc. 16-1 at 1.) The Policy provides coverage for loss and damage to the Property, up to a stated policy limit of $3,375,400, with a $76,636.00 premium. (Doc. 16-1 at 1.) Plaintiff paid the premium for the Policy.

The Policy was amended by endorsement provisions which follow the main body of the Policy. (Doc. 16-1 at 10-14.) Most relevant here is the Missouri Actual Cash Value Endorsement 1 provision which modifies Condition 11 ("Loss Payable") as follows:

---

[1] The facts set forth in the Background section of this Order are drawn from the complaint, (Doc. 1-2), and insurance policy, (Doc. 16-1), which is embraced by the pleadings.

> **11. Loss Payable** is deleted and replaced by the following: **11. Loss Payable.** . . .
> b. **We** will adjust all losses with the **named insured**. Loss will be made payable to
> the **named insured** and the **borrower** as their interests appear, either by a single
> instrument or by separate instruments payable respectively to the **named insured**
> and the **borrower**, at our option. No coverage will be available to any mortgagee
> other than that shown as the **named insured** on the Declarations.

(Doc. 16-1 at 13 (emphasis in original).) The "named insured" thus refers to PHH Mortgage Services, and "borrower" refers to Tyson Daniel, as listed on the Declarations. (*Id.* at 1.)

On September 3, 2023, a fire occurred at the property causing significant damage. Fire is a covered peril under the Policy. (Doc. 16-1 at 4.) Plaintiff notified Defendant of the loss on September 5, 2023. On March 27, 2024, Defendant issued a coverage determination and made two payments to Plaintiff totaling approximately $478,000.

Plaintiff alleges that Defendant only made partial payments and refused to pay losses based on the actual cash value method as required by the Policy. Accordingly, Plaintiff filed suit in the Circuit Court of Jackson County on October 6, 2025. Plaintiff's petition asserts two counts: First, Plaintiff asserts a claim for breach of contract, alleging that Defendant failed to properly value Plaintiff's loss, failed and refused to pay the full benefits due and owing to the Plaintiff under the Policy for his covered loss, and tendered only partial payment based on an improper valuation method (Count 1). (Doc. 1-2 at 4-5.) Second, Plaintiff asserts a claim for vexatious refusal to pay, pursuant to §§ 375.296 and 375.420, RSMo (Count 2). (Doc. 1-2 at 5.) On November 25, 2025, Defendant removed this case to federal court based on diversity-of-citizenship jurisdiction. (Doc. 1 at 1.)

Further facts are set forth below as necessary.

### Discussion

### I.    Defendant's Motion for Judgment on the Pleadings (Doc. 16)

Defendant argues that its motion for judgment on the pleadings should be granted because Plaintiff lacks standing to enforce the Policy because Plaintiff is neither a party with privity to the Policy nor an intended third-party beneficiary of the Policy.[2] Plaintiff contends that he is an

---

[2] Defendant also argues that Plaintiff cannot overcome this lack of standing by asserting a claim for equitable estoppel, as Plaintiff seeks to do in his motion to amend the complaint. Finding the Court's decision as to Defendant's first argument dispositive for the following reasons, the Court does not address whether Plaintiff's proposed amendment to add a claim for equitable estoppel establishes standing.

2

intended third-party beneficiary of the Policy based on the Policy language anticipating payments be made to the "borrower."

### A.    Judgment on the Pleadings Legal Standard

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) "require[s] the court to accept as true all factual allegations set out in the complaint and to construe the complaint in the light most favorable to the" non-moving party, "drawing all inferences in [their] favor." *Ashley County v. Pfizer*, 552 F.3d 659, 665 (8th Cir. 2009) (internal quotation marks omitted). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law, the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* (internal quotation marks omitted). "While courts generally may not consider materials outside the pleadings in deciding whether to grant a motion for judgment on the pleadings, courts may consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (internal quotation marks omitted).

### B.    Standing to Enforce the Policy

Defendant argues that it is entitled to judgment on the pleadings because Plaintiff lacks standing to enforce the Policy because Plaintiff is neither a party to the Policy nor an intended third-party beneficiary. Plaintiff counters that the endorsement provision which modifies and replaces Condition 11 "expressly amend[ed] the loss-payment provision to include the borrower as a payee," and thus Plaintiff is an intended third-party beneficiary with standing to enforce the Policy.

At the outset, the Court notes that the parties contest whether the question of Plaintiff's standing to enforce the contract is a question of Article III standing (a prerequisite to this Court's subject-matter jurisdiction) or contractual standing which goes to the merits of Plaintiff's breach of contract claim. "The Eighth Circuit has stressed that '[i]t is crucial . . . not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive.'" *Robert E. Levy, D.M.D., LLC v. Hartford Fin. Servs. Grp. Inc.*, No. 4:20-cv-00643-SRC, 2020 WL 6582671, at *2 (E.D. Mo. Nov. 10, 2020) (quoting *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016)). Thus, in *Robert E. Levy, D.M.D., LLC*, the court rejected

an Article III subject-matter-jurisdiction challenge to standing where Hartford challenged standing on the basis that Robert E. Levy, D.M.D., LLC, "was not a party to the insurance policies." *Id.* The court concluded that this inquiry "asks the Court to evaluate the merits of Plaintiffs' breach of contract claim when assessing subject matter jurisdiction, which it must refrain from doing." *Id.*; *see also Aufenkamp v. Grabill*, 112 S.W.3d 455, 458-59 (Mo. Ct. App. 2003) (treating the question of whether the individual was a party to the contract or a third-party beneficiary to the contract as a threshold jurisdictional standing issue). For purposes of this Order, the Court finds that the question presented is more akin to a Rule 12(b)(6) contractual standing challenge.[3]

Thus, the Court proceeds to consider Plaintiff's claims under the Rule 12(c) standard. To state a prima facie claim of breach of contract under Missouri law, Plaintiff must allege facts showing: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. *Topchain v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014). "Only parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 971 (8th Cir. 2015) (quoting *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. 2007)). Plaintiff's claim for vexatious refusal to pay under Missouri law "is derivative of a breach-of-contract claim." *Aziz v. Allstate Ins.*, 875 F.3d 865, 869 (8th Cir. 2017) (citing *Fischer v. First Am. Title Ins.*, 388 S.W.3d 181, 184 (Mo. Ct. App. 2012)).

Thus, whether both of Plaintiff's claims survive the instant motion for judgment on the pleadings depends on whether Plaintiff is a party to or intended third-party beneficiary of the Policy. Here, the parties agree on the relevant facts and policy language. The Policy Declarations list the named insured as PHH Mortgage Services and the borrower as Tyson Daniel. (Doc. 16-1 at 1.) The Missouri Actual Cash Value Endorsement 1 states that losses "will be made payable to the named insured and the borrower as their interests appear, either by a single instrument or by separate instruments payable respectively to the named insured and the borrower, at our option." (*Id.* at 13.) The disagreement as to whether Plaintiff is a party to or third-party beneficiary of the

---

[3] The Court would also conclude that Article III standing exists for Plaintiff's breach of contract and vexatious refusal to pay claims. Plaintiff has pleaded an injury (underpayment of an insurance claim) which is traceable to the Defendant's actions (refusing to fully pay the claim), and can be redressed by a favorable decision (the Court finding breach of contract or vexatious refusal to pay and awarding damages for the underpayment).

4

Policy under the foregoing language is a matter of contract interpretation.  In Missouri, "[t]he interpretation of a written contract is a matter of law for the court." *CitiMortgage, Inc. v. Platinum Home Mortg., Corp.*, 915 F.3d 501, 506 (8th Cir. 2019).

First, the Court concludes that Plaintiff is not a party to the Policy.  The loss payable provision in the Missouri Actual Cash Value Endorsement is frequently referred to as an "open loss clause" pursuant to which "the loss payee's rights, as against the insured, are dependent upon the acts or omissions of the insured." *Gen. Motors Acceptance Corp. v. Windsor Grp.*, 2 S.W.3d 836, 839 (Mo. Ct. App. 1999) ("*GMAC*").  Here, Plaintiff is a "loss payee"[4] as the borrower referenced in the loss payable clause.[5]  Plaintiff does not become a party to the Policy merely by being a loss payee under the open loss clause. *Id.* (concluding GMAC had no standing *as a party* to the policy where it was a loss payee under an open clause).  Only PHH Mortgage Services, as the insured, and Standard Guarantee Insurance Company, as the insurer, are parties to the Policy.

However, this determination is not dispositive to the issue of Plaintiff's standing.  Upon review of the Policy and relevant caselaw, the Court concludes that Plaintiff has standing to enforce the contract as a third-party beneficiary.  "[A] third party beneficiary is one who is not privy to a contract or its consideration but who may nonetheless maintain a cause of action for breach of contract." *Id.*  To qualify as a third-party beneficiary, the terms of the Policy must "clearly express an intent to benefit that party; mere incidental beneficiaries cannot enforce a contract." *Id.*  The Court is persuaded here by the Missouri Court of Appeals' decision in *GMAC v. Windsor Group*, which held that a loss payee to an automotive insurance policy had standing as a third-party beneficiary. *Id.* at 840.  In *GMAC*, plaintiff GMAC was recognized as a loss payee under the relevant insurance policy and was designated to receive the proceeds in the event of damage to the insured vehicle at issue. *Id.* at 839.  Accordingly, the court found that there was a clearly expressed intent under the insurance policy to benefit GMAC, and that, therefore, GMAC had standing as a third-party beneficiary to bring suit. *Id.* at 839-40 ("The right to have the policy proceeds paid to the secured party as a loss payee 'as its interests may appear' constitutes an interest which entitled the secured party to maintain a suit for the loss.").

---

[4] A loss payee is a person or entity who "is not itself an insured under the policy . . . [but is] the designated person to whom the loss is to be paid." *Northwest Steel Erection Co. v. Zurich Am. Ins.*, No. 4:07-cv-03184, 2008 WL 187687, at *5 (D. Neb. Jan. 18, 2008).

[5] PHH Mortgage Services, as the named insured, is also entitled to receive payments under this provision.

To be sure, *GMAC* addressed a *borrower-purchased* insurance policy to which the lender, GMAC, was the loss payee. Here, instead, PHH Mortgage Services obtained a *lender-purchased* insurance policy to which Plaintiff, the borrower, is the loss payee. However, the principle behind the decision in *GMAC* applies in this context as well. Plaintiff is explicitly identified as the borrower and listed as a loss payee under the modified loss payable provision. (Doc. 16-1 at 1, 13.)[6] This, in conjunction with the $478,000 in payments made to Plaintiff, (Doc. 1-2 at 4; Doc. 23 at 4-5), indicates that Plaintiff is an intended third-party beneficiary of this Policy. In other words, Plaintiff became an intended third-party beneficiary under the Policy pursuant to the modified loss payable provision because it contemplates issuing payments directly to Plaintiff as the borrower, whether by a "single instrument or by separate instruments." (Doc. 16-1 at 13.) And, in fact, Defendant did issue two payments totaling nearly half a million dollars to Plaintiff. Thus, based on the language of the Policy, the Court concludes that Plaintiff as the borrower is an intended third-party beneficiary with standing to enforce the Policy.

The caselaw Defendant cites to the contrary is not persuasive. Defendant relies heavily on *Rainey v. Standard Guarantee Insurance Company*, No. 20-cv-03112-SRB, 2020 WL 5536486 (W.D. Mo. Sept. 15, 2020), in contesting Plaintiff's standing as a third-party beneficiary. In *Rainey*, the court concluded that a borrower loss payee did not have standing as a third-party beneficiary. The court distinguished *GMAC* on the basis that *GMAC* addressed a borrower-purchased insurance policy that listed the lender as a loss payee. *Id.* at *5.[7] The Court is not persuaded that this distinction—a borrower- versus lender-purchased policy—is materially dispositive. The loss payable provisions at issue in *GMAC* and in this case both provide for payments to the loss payee, "as their interests appear,"[8] and the loss payee is not otherwise a party to the contract. The relevant comparator, then, is that the two open loss clause provisions provide

---

[6] In addition, the Court notes that the same endorsement expressly clarified as well that the broad terms "you" and "your" as used in the Policy "refer to the financial institution as **named insured** and the **borrower** shown in the Declarations." (Doc. 16-1 at 13 (underline emphasis added).)

[7] In *Rainey*, there was also a question whether Plaintiff Barbara Rainey was a "borrower" (and thus a "loss payee") under the insurance policy at all. Ms. Rainey's ex-husband was the named borrower in the contract, and one issue in the case was the effect of their subsequent divorce on Ms. Rainey's rights, if any, under the policy. While the court ultimately decided Rainey would not be a third-party beneficiary even if she were a borrower under the policy, the Court notes this added complexity in the Rainey case which is not present here. Plaintiff is the expressly named borrower on the Policy.

[8] The language in GMAC is "as its interests may appear." *GMAC*, 2 S.W.2d at 839-40.

6

for payment to a loss payee who was not a party to the contract. *GMAC* concluded that the loss payee under an open loss clause was a third-party beneficiary, and the Court similarly concludes that Plaintiff is a third-party beneficiary to the Policy pursuant to the open loss clause included therein.[9]

Thus, Defendant is not entitled to judgment on the pleadings for lack of standing, and Defendant's motion for judgment on the pleadings is **DENIED**.

## II. Plaintiff's Motion to Amend (Doc. 18)

In response to Defendant's motion for judgment on the pleadings, Plaintiff moved for leave to file a first amended complaint to assert a claim for equitable estoppel barring Defendant from asserting its standing defense. Specifically, Plaintiff argues that challenging standing for the first time in Defendant's motion for judgment on the pleadings is inconsistent with Defendant's prior conduct in accepting, adjusting, and partially paying Plaintiff's insurance claim. In light of the Court's denial of Defendant's motion for judgment on the pleadings above, the Court concludes that Plaintiff's motion to amend to add a claim for equitable estoppel—which was brought for the purpose of overcoming Defendant's challenge to standing—is moot.[10] Accordingly, Plaintiff's motion to amend the complaint is **DENIED as moot**.

### Conclusion

Accordingly, after careful consideration and for the reasons explained above, Defendant's motion for judgment on the pleadings, (Doc. 16), is **DENIED**, and Plaintiff's motion to amend the complaint, (Doc. 18), is **DENIED as moot**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 8, 2026

---

[9] The Court does not address the out-of-circuit caselaw cited by Defendant in its briefs. The Court similarly finds that caselaw unpersuasive.

[10] In a status conference with the Court on June 2, 2026, (Doc. 29), Plaintiff counsel confirmed that the motion to amend would be moot if the Court were to deny Defendant's motion for judgment on the pleadings. *See Garrett v. Steele*, No. 4:12-cv-00402-JAR, 2013 WL 718877, at *1 (E.D. Mo. Feb. 27, 2013) (denying motion because petitioner conceded in his response that the motion was moot).